Arby Aiwazian (Cal. State Bar No. 269827)
*arby@calljustice.com*
Joanna Ghosh (Cal. State Bar No. 272479)
*joanna@calljustice.com*
Yasmin Hosseini (Cal. State Bar No. 326399)
*yasmin@calljustice.com*
Selena Matavosian (Cal. State Bar No. 348044)
*selena@calljustice.com*
**LAWYERS *for* JUSTICE, PC**
450 North Brand Boulevard, Suite 900
Glendale, California 91203
Tel: (818) 265-1020 / Fax: (818) 265-1021

*Attorneys for* Plaintiff and the Class

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MANUEL BRUNO, individually, and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act;<br><br>   Plaintiff,<br><br> vs.<br><br>U.S RENAL CARE, INC., an unknown business entity; and DOES 1 through 100, inclusive,<br><br>   Defendant. | Case No.: 2:21-CV-04617-FLA-MBKx<br><br>Honorable Fernando L. Aenlle-Rocha<br>Courtroom 6B<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Notice of Motion and Motion for Class Counsel Award and Class Representative Service Award; Declaration of Class Counsel (Selena Matavosian); Declaration of Class Representative (Manuel Bruno); Declaration of Settlement Administrator (Lisa Pavlik); Table 1; Table 2; [Proposed] Order Granting Final Approval of Class Action and PAGA Settlement and Judgment; and [Proposed] Order Awarding Class Counsel Award and Class Representative Service Award filed concurrently herewith]<br><br>Date:   December 5, 2025<br>Time:   2:00 p.m. |

| | |
|---|---|
| Courtroom: | 6B |
| Complaint Filed: | March 3, 2021 |
| FAC Filed: | June 24, 2021 |
| SAC Filed: | September 5, 2024 |
| Trial Date: | None Set |

**LAWYERS *for* JUSTICE, PC**
450 North Brand Boulevard, Suite 900
Glendale, California 91203

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**LAWYERS *for* JUSTICE, PC**
450 North Brand Boulevard, Suite 900
Glendale, California 91203

**PLEASE TAKE NOTICE** that on December 5, 2025, at 2:00 p.m. or as soon thereafter as this matter may be heard before the Honorable Fernando L. Aenlle-Rocha, in Courtroom 6B of the United States District Court for the Central District of California, located at First Street Courthouse, 350 West 1st Street, 6th Floor, Los Angeles, California 90012, Plaintiff Manuel Bruno ("Plaintiff" or "Class Representative") will and hereby does move for an order granting final approval of:

1.    The proposed class action settlement described herein and as set forth in the parties' Second Amended Joint Stipulation of Class Action and PAGA Settlement and Release of Claims ("Settlement," "Agreement," or "Settlement Agreement") on the grounds that the Settlement is fair, adequate, and reasonable because, *inter alia*:

- A Net California Settlement Fund of approximately **$1,173,257.02** will be fully distributed to all California Class Members who did not submit a valid and timely Request for Exclusion ("Settlement California Class Member");
- **No Notices of Objection** were submitted to the settlement administrator, Simpluris, Inc. ("Settlement Administrator" or "Simpluris");
- **Five (5) Requests for Exclusion** were submitted to the Settlement Administrator;

2.    Payment in the amount of **$45,000.00** to the Settlement Administrator, Simpluris, for Settlement Administrator Costs;

3.    Allocation of **$377,932.50** to the FCRA Class Members who did not submit a valid and timely Request for Exclusion ("Settlement FCRA Class Members") for the FCRA Settlement Amount; and

4.    Allocation for the penalties under the California Labor Code Private Attorneys General Act of 2004, Labor Code section 2698, et seq. ("PAGA"), in the amount of $258,300.00, of which seventy-five percent (75%), or **$193,725.00**, will be paid to the California Labor and Workforce Development Agency ("LWDA

Payment"), and twenty-five percent (25%), or **$64,575.00**, will be distributed to PAGA Group Members on a *pro rata* basis ("PAGA Group Member Amount").

This motion is based upon the following Memorandum of Points and Authorities and the Declaration of Settlement Administrator (Lisa Pavlik of Simpluris) in support thereof; as well as the concurrently-filed Notice of Motion and Motion for Class Counsel Award and Class Representative Service Award, the Declarations of Class Counsel (Selena Matavosian) and Class Representative (Manuel Bruno), Table 1, and Table 2 in support thereof; the pleadings and other records on file with the Court in this matter; and such evidence and oral argument as may be presented at or before the hearing on this Motion.

Dated: November 7, 2025        **LAWYERS *for* JUSTICE, PC**

By: _____

Selena Matavosian
*Attorneys for* Plaintiff and the Class

# TABLE OF CONTENTS

I.    SUMMARY OF MOTION ............................................................................1

II.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND.............3

III.  THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT
      PURPOSES .................................................................................................3

IV.   SUMMARY OF THE SETTLEMENT TERMS AND PLAN OF
      DISTRIBUTION.........................................................................................4

V.    THE SETTLEMENT ADMINISTRATION PROCESS .........................7

VI.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE CLASS
      ACTION SETTLEMENT. ........................................................................11

      A.    The Settlement Resulted from Arm's-Length Negotiations Based
            Upon Extensive Investigation and Discovery. ................................12

      B.    The Risks Inherent in Continued Litigation Favor Final Approval
            of the Settlement. ............................................................................15

      C.    The Settlement Is Fair, Reasonable, and Adequate.......................17

      D.    The Class Was Represented by Competent Counsel. ....................18

      E.    There Are No Notices of Objection to the California Class
            Settlement and/or FCRA Class Settlement. ..................................19

VII.  THE SETTLEMENT ADMINISTRATOR COSTS ARE FAIR AND
      REASONABLE AND SHOULD BE APPROVED. ...................................19

VIII. CONCLUSION ........................................................................................20

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

# TABLE OF AUTHORITIES

**Cases**

*7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135 ..................................................................................................................12

*Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43 ............................................11, 12

*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794 ...............................11, 12, 19

*In re American Bank Note Holographics, Inc., Securities Litigation* (S.D.N.Y. 2001) 127 F.Supp.2d 418 ........................................................................................18

*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224....................11, 12, 19

**Other Authorities**

Conte & Newberg, *Newberg on Class Actions* (4th Ed., 2002) § 11.47.................18

*LAWYERS for JUSTICE, PC*
450 North Brand Boulevard, Suite 900
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    SUMMARY OF MOTION

Plaintiff Manuel Bruno ("Plaintiff") seeks final approval of the Second Amended Joint Stipulation of Class Action and PAGA Settlement and Release of Claims ("Settlement," "Agreement," or "Settlement Agreement"), entered into by and between Plaintiff and Defendant U.S. Renal Care Inc. ("Defendant") (together with Plaintiff, the "Parties").[1]

The Settlement provides for a Gross Settlement Fund of $2,500,000.00 and seeks relief on behalf of the following California Class Members, FCRA Class Members and PAGA Group Members, respectively:

> All current and former non-exempt employees of Defendant in California during the California Class Period (or if any such person is incompetent, deceased, or unavailable due to military service, the person's legal representative or successor in interest evidenced by reasonable verification). ("California Class" or "California Class Members"). Settlement Agreement, ¶ I.6.

> All of Defendant's current and former employees and applicants for employment in the United States who applied for a job with Defendant for whom a background check was performed during the FCRA Class Period (or if any such person is incompetent, deceased, or unavailable due to military service, the person's legal representative or successor in interest evidenced by reasonable verification) ("FCRA Class Members"). Settlement Agreement, ¶ I.20.

> All current and former non-exempt employees of Defendant in California during the PAGA Period (or if any such person is incompetent, deceased, or unavailable due to military service, the person's legal representative or successor in interest evidenced by reasonable verification) ("PAGA Group" or "PAGA Group Members"). Settlement Agreement, ¶ I.38.

///

---

[1] A copy of the fully-executed Settlement Agreement is attached as "EXHIBIT 1" to the Declaration of Selena Matavosian in Support of Plaintiff's Renewed Motion for Preliminary Approval of Class Action Settlement (Docket No. 74-1).

**LAWYERS *for* JUSTICE, PC**
450 North Brand Boulevard, Suite 900
Glendale, California 91203

Plaintiff moves for final approval of all payments allocated and provided for by the Settlement, to be paid from the Gross Settlement Fund, including and not limited to, Class Representative Service Award in the amount of $7,500.00 to Plaintiff, attorneys' fees in the amount of $625,000.00, which is twenty-five percent (25%) of the Gross Settlement Fund, and reimbursement of litigation costs and expenses in the amount of $13,010.48 (together "Class Counsel Award")[2] to Lawyers *for* Justice, PC ("Class Counsel"), Settlement Administrator Costs in the amount of $45,000.00 to Simpluris, Inc. ("Simpluris" or "Settlement Administrator"), FCRA Settlement Amount in the amount of $377,932.50 to Settlement FCRA Class Members, and $258,300.00 allocated to penalties under the Private Attorneys General Act ("PAGA Settlement Amount"), of which $193,725.00 will be paid to the California Labor and Workforce Development Agency ("LWDA") for its portion of the PAGA Settlement Amount ("LWDA Payment"), and $64,575.00 will be distributed to PAGA Group Members on a *pro rata* basis ("PAGA Group Member Amount"). Settlement Agreement, ¶¶ I.23, III.18., III.24, III.25, III.26, & III.28. The Net California Settlement Fund is the amount available for distribution to California Class Members who did not submit a valid and timely Request for Exclusion ("Settlement California Class Members"). *Id*., ¶¶ I.54 & III.18.

The Settlement is fair, adequate, and reasonable, and is the product of arm's-length, good-faith negotiations by experienced counsel, presided over by a highly-regarded mediator who is experienced in mediating wage-and-hour class action lawsuits. Most importantly, as of the date of this Motion, *not a single Class Member has objected to the California Class Settlement or the FCRA Class Settlement, or to*

---

[2] In the interest of judicial efficiency, and in support of the allocations and requests for the Attorneys' Fees and Costs and Enhancement Payment, Plaintiff respectfully refers the Court to Plaintiff's Motion for Attorneys' Fees and Costs and Enhancement Payment, and papers in support thereof, filed concurrently herewith, on November 7, 2025.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*the contemplated Class Counsel Award, Class Representative Service Award, Settlement Administrator Costs, the allocation for the FCRA Settlement Amount, or the allocation for the PAGA Settlement Amount.*

Accordingly, the Court should grant final approval of the Settlement, and all payments allocated and provided for by the Settlement Agreement, including and not limited to the Settlement Administrator Costs, FCRA Settlement Amount, and the PAGA Settlement Amount.

## II.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

For a discussion of relevant procedural history and facts regarding this matter, please see the concurrently filed Declaration of Selena Matavosian in Support of Plaintiff's Motion for Final Approval of Class Action and PAGA Settlement and Motion for Class Counsel Award and Class Representative Service Award ("Matavosian Decl.") at paragraphs 4.a-4.ll.

On March 11, 2025, the Court entered the Corrected Order Granting Motion for Preliminary Approval of Class Action and PAGA Settlement [Dkt. 74] (Doc. No. 77) ("Preliminary Approval Order"), thereby preliminarily approving the terms of the Settlement, the Notice of Pendency of Class Action Settlement and Hearing Date for Court Approval ("Notice of Class Action Settlement" or "Class Notice"), and the proposed administration procedures and associated deadlines.

Plaintiff now moves for final approval of the Settlement, Settlement Administrator Costs, the FCRA Settlement Amount, and the PAGA Settlement Amount, and for final approval of the requested Class Counsel Award and Class Representative Service Award, as set forth in the concurrently filed Motion for Class Counsel Award and Class Representative Service Award.

## III.    THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

For the reasons previously addressed by way of Plaintiff's moving and supporting papers for the Motion for Preliminary Approval (namely, that the relevant

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

class certification factors are satisfied, i.e., ascertainability, numerosity, community of interest, typicality, adequacy of representation, superiority, and manageability), as well as the reasons discussed herein regarding the completion of the due process notice procedure, the Court is requested to now make final its preliminary certification of the class for settlement purposes.

## IV.  **SUMMARY OF THE SETTLEMENT TERMS AND PLAN OF DISTRIBUTION**

Under the terms of the Settlement Agreement, Defendant has agreed to pay a Gross Settlement Fund of $2,500,000.00. Settlement Agreement, ¶ I.27. Subject to approval by the Court, the Net California Settlement Fund will be calculated by deducting the following amounts from the Gross Settlement Fund: (1) the Court-approved Class Counsel Award, consisting of attorneys' fees in the amount of 25% of the Gross Settlement Fund (equal to $625,000.00) and reimbursement of litigation costs and expenses in the amount of $13,010.48 to Class Counsel; (2) the Court-approved Class Representative Service Award in the amount of $7,500.00 to Plaintiff Manuel Bruno; (3) Settlement Administrator Costs in the amount of $45,000.00 to Simpluris; (4) the PAGA Settlement Amount in the amount of $258,300.00; and (5) the FCRA Settlement Amount in the amount of $377,932.50. *Id.*, ¶¶ I.23, III.18., III.24, III.25, III.26, & III.28. In the event the allocations towards each of these categories are awarded in full, the Net California Settlement Fund that will be available to be allocated to Settlement California Class Members is estimated to be at least $1,173,257.02, and there is no reversion to Defendant.[3] *Id.*, ¶ III.18. The

---

[3] This amount is higher than the amount stated in Paragraph 19 of the accompanying Declaration of Lisa Pavlik on Behalf of Simpluris, Inc. Regarding Notice and Settlement Administration ("Simpluris Declaration" or "Simpluris Decl.") because the Settlement Administrator's calculation assumes that Class Counsel will obtain litigation costs and expenses in the maximum amount of $17,000.00, which is allocated under the Settlement. However, Class Counsel seeks the amount of only $13,010.48 for reimbursement of litigation costs and expenses, and the difference of $3,989.52 will remain part of the Net California Settlement Fund.

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

entire Net California Settlement Fund will be distributed to Settlement California Class Members based upon their Compensable Work Weeks during the California Class Period, the entire FCRA Settlement Amount will be distributed to FCRA Class Members who did not submit a valid and timely Request for Exclusion ("Settlement FCRA Class Members") based on an equal *pro rata* portion, and the entire PAGA Settlement Amount will be distributed seventy-five percent (75%) to the LWDA (i.e., LWDA Payment) and twenty-five percent (25%) to PAGA Group Members (i.e., PAGA Group Member Amount) based on their Compensable Pay Periods during the PAGA Period. *Id*., ¶¶ III.19, III.21 & III.22.

Settlement California Class Members will be paid a *pro rata* share of the Net California Settlement Fund ("Individual California Settlement Payment") based upon the number of weeks in which each California Class Member was employed as a non-exempt employee for Defendant in the State of California during the California Class Period ("Compensable Work Weeks"). Settlement Agreement, ¶¶ I.13, I.29 & III.19. After final approval of the Settlement, the Settlement Administrator will divide the final Net California Settlement Fund by the credited Compensable Work Weeks of all Settlement California Class Members to yield the "Final California Compensable Work Week Value," and multiply each Settlement California Class Member's individual credited Compensable Work Weeks by the Final California Compensable Work Week Value to yield hers, his, or their estimated Individual California Settlement Payment. *Id*., ¶ III.19.b.

FCRA Class Members who did not submit a valid and timely Request for Exclusion ("Settlement FCRA Class Members") will be paid from the FCRA Settlement Amount ("Individual FCRA Settlement Payment") based on an equal *pro rata* portion. Settlement Agreement, ¶¶ I.28 & I.56.

PAGA Group Members will be paid a *pro rata* share of the PAGA Group Member Amount ("Individual PAGA Settlement Payment") based on the number of pay periods in which each PAGA Group Member was employed as a non-exempt

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

employee for Defendant in the State of California during the PAGA Period ("Compensable Pay Periods"). Settlement Agreement, ¶ I.12 & I.30. The Settlement Administrator will divide the PAGA Group Member Amount, i.e., 25% of the PAGA Settlement Amount, by the total number of Compensable Pay Periods credited by all PAGA Group Members to yield the "PAGA Compensable Pay Period Value," and multiply each PAGA Group Member's individual credited Compensable Pay Periods by the PAGA Compensable Pay Period Value to yield hers, his, or their Individual PAGA Settlement Payment. *Id.*, ¶ III.22.

California Class Members and FCRA Class Members (together, "Class Members") forty-five (45) calendar days after the Settlement Administrator mails the Notice of Class Action Settlement ("Response Deadline") to submit a written letter indicating a request to be excluded from the California Class Settlement and/or FCRA Class Settlement ("Request for Exclusion"), written objection to the California Class Settlement and/or FCRA Class Settlement ("Notice of Objection"), and/or written letter disputing the pre-printed information on the Class Notice as to her, his, or their Compensable Work Weeks during the California Class Period ("Compensable Work Weeks Dispute"). Settlement Agreement, ¶¶ I.9, I.14, I.34, I.50 & I.51. Class Members who received a re-mailed Notice of Class Action Settlement shall have their Response Deadline extended by the longer of fourteen (14) calendar days from the date of re-mailing or the remaining original Response Deadline period. *Id.*, ¶ III.11. The Response Deadline was September 25, 2025 and the extended deadline for re-mailed Class Notices was October 9, 2025. Simpluris Decl., ¶ 14. As of the date of this motion, the Settlement Administrator has received one (1) Request for Exclusion from a California Class Member, four (4) Requests for Exclusion from FCRA Class Members, zero (0) Notices of Objection from Class Members, and zero (0) Compensable Work Weeks Dispute from California Class Members. *Id.*, ¶¶ 15, 16 & 17.

///

All Individual California Settlement Payments will be allocated as follows: twenty percent (20%) as wages and eighty percent (80%) as interest, penalties, and non-wage damages. Settlement Agreement, ¶ III.20. The portion allocated to wages will be reported on an IRS Form W-2 and the portions allocated to penalties, interest, and non-wage damages will be reported on an IRS Form 1099 by the Settlement Administrator. Ibid. The Settlement Administrator will withhold the employee's share of taxes and withholdings with respect to the wages portion of the Individual California Settlement Payments, and issue checks to Settlement California Class Members net of these taxes and withholdings. Ibid. Defendant's share of payroll taxes due on the portion of the Individual California Settlement Payments allocated to wages, including but not limited to Defendant's FICA and FUTA contributions, shall be paid separately from, and in addition to, the Gross Settlement Fund. Id., ¶ III.18. All Individual FCRA Settlement Payments will be allocated as one hundred percent (100%) non-wages for which an IRS Form 1099 will be issued. Id., ¶ III.21. All Individual PAGA Settlement Payments will be allocated as one hundred percent (100%) non-wages for which an IRS Form 1099 will be issued (if applicable). Id., ¶ III.22.

Each Individual Class Settlement Payment, Individual FCRA Settlement Payment, and Individual PAGA Settlement Payment will be valid and negotiable for one hundred and eighty (180) calendar days from the date the checks are issued, and thereafter, shall be canceled. Settlement Agreement, ¶ III.23. All funds associated with such canceled checks will be transmitted to the State of California Office of the Controller Unclaimed Property Division in the name of the Settlement Class Members and/or PAGA Group Member who did not cash his/her/their Settlement check. Ibid.

## V.    THE SETTLEMENT ADMINISTRATION PROCESS

The Court-appointed Settlement Administrator, Simpluris, has taken all necessary steps to effectuate the notice and settlement administration process, as set

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

forth in the Court's Preliminary Approval Order.

On or about April 25, 2025, Simpluris received the Court-approved three (3) versions of the Class Notice for Class Members who are only California Class Members, Class Members who are only FCRA Class Members, and Class Members who are both California Class Members and FCRA Class Members. Simpluris Decl., ¶ 6.

On or about April 25, 2025, Defendant's counsel provided Simpluris a list containing each California Class Member's last known full name; last known address; last known home telephone number; Social Security number; and Compensable Work Weeks (collectively, "California Class Information") and each FRCA Class Member's last known full name; last known address; last known home telephone number; and Social Security number (collectively, "FCRA Class Information"). Simpluris Decl., ¶ 7.

The California Class Information and FCRA Class Information contained data for 11,137 individuals. Simpluris Decl., ¶ 8. Of the 11,137 individuals, 2,089 individuals were identified to be California Class Members who are credited with 231,912 Compensable Work Weeks and 9,048 individuals were identified to be only FCRA Class Members. Ibid. Of the 2,089 California Class Members, 1,870 individuals were also identified to be PAGA Group Members who are credited with 87,929 Compensable Pay Periods. Ibid. Of the 2,089 California Class Members, 996 individuals were identified to be California Class Members, but not FCRA Class Members, and 1,093 individuals were identified to be both California Class Members and FCRA Class Members. Ibid. There were 10,141 individuals who were identified to be FCRA Class Members. Ibid.

The mailing addresses contained in the California Class Information and FCRA Class Information were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. Simpluris Decl., ¶ 9. The NCOA contains requested changes of address filed with the U.S.

LAWYERS for JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

Postal Service. Ibid. In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA would be utilized in connection with the mailing of the Class Notice. Ibid. Simpluris was able to locate one thousand nine hundred fifty-two (1,952) updated addresses using NCOA prior to the mailing of the Class Notice. Ibid.

On or about August 11, 2025, the Class Notice was mailed to nine hundred ninety-six (996) individuals identified as Class Members who are only California Class Members. Simpluris Decl., ¶ 10. On or about August 11, 2025, the Class Notice was mailed to nine thousand forty-eight (9,048) individuals identified as Class Members who are only FCRA Class Members. *Id.*, ¶ 11. On or about August 11, 2025, the Class Notice was mailed to one thousand ninety-three (1,093) individuals identified as Class Members who are both California Class Members and FCRA Class Members. *Id.*, ¶ 12.

As of the date of this Motion, forty-six (46) Class Notices mailed to Class Members who are only California Class Members were returned to Simpluris. Simpluris Decl., ¶ 13.a. Through the advanced address searches and utilizing the USPS forwarding address database, Simpluris was able to locate twenty-two (22) updated addresses and Simpluris promptly mailed a Class Notice to those updated addresses. Ibid. There are twenty-four (24) Class Notices mailed to Class Members who are only California Class Members that remain undeliverable. Ibid.

As of the date of this Motion, one thousand three hundred seven (1,307) Class Notices mailed to Class Members who are only FCRA Class Members were returned to Simpluris. Simpluris Decl., ¶ 13.b. Through the advanced address searches and utilizing the USPS forwarding address database, Simpluris was able to locate one thousand one hundred five (1,105) updated addresses and Simpluris promptly mailed a Class Notice to those updated addresses. Ibid. There are two hundred two (202) Class Notices mailed to Class Members who are only FCRA Class Members that remain undeliverable. Ibid.

As of the date of this Motion, fifty-one (51) Class Notices mailed to Class Members who are both California Class Members and FCRA Class Members were returned to Simpluris. Simpluris Decl., ¶ 13.c. Through the advanced address searches and utilizing the USPS forwarding address database, Simpluris was able to locate twenty-six (26) updated addresses and Simpluris promptly mailed a Class Notice to those updated addresses. Ibid. There are twenty-five (25) Class Notices mailed to Class Members who are both California Class Members and FCRA Class Members that remain undeliverable. Ibid.

The Response Deadline was September 25, 2025 and the extended Response Deadline for Class Members to whom a Class Notice was re-mailed to was October 9, 2025. Simpluris Decl., ¶ 14. As of the date of this Motion, the Settlement Administrator has received one (1) Request for Exclusion from a California Class Member, four (4) Requests for Exclusion from FCRA Class Members, zero (0) Notices of Objection from Class Members, and zero (0) Compensable Work Weeks Dispute from California Class Members. *Id.*, ¶¶ 15, 16 & 17.

To date, there are 2,088 California Class Members who did not submit a valid and timely Request for Exclusion (i.e., Settlement California Class Members) and who will be paid their portion of the Net California Settlement Fund. Simpluris Decl., ¶ 18. Additionally, there are 10,137 FCRA Class Members who did not submit a valid and timely Request for Exclusion (i.e., Settlement FCRA Class Members) and who will be paid their portion of the FCRA Settlement Amount. *Id.*, ¶ 21. The Net California Settlement Fund of approximately $1,173,257.02 will be distributed to Settlement California Class Members in accordance with the terms of the Settlement.[4] Settlement Agreement, ¶¶ III.18 & III.19. The highest Individual California Settlement Payment is currently estimated to be approximately $1,053.88 and the average Individual California Settlement Payment is currently estimated to

**LAWYERS** *for* **JUSTICE, PC**
450 North Brand Boulevard, Suite 900
Glendale, California 91203

---

[4] See n.3, *supra*.

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

be approximately \$559.99.[5] Simpluris Decl., ¶ 20. The estimated Individual FCRA Settlement Payment is approximately \$37.28. *Id*., ¶ 22. The highest Individual PAGA Settlement Payment is currently estimated to be approximately \$58.02 and the average Individual PAGA Settlement Payment is currently estimated to be approximately \$34.53. *Id*., ¶ 24.

## VI.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT.

The trial court has broad discretion to determine whether a class action settlement is fair and reasonable. *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 52. To determine whether the settlement is fair and reasonable, courts consider relevant factors such as:

> the strength of plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement.

*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1801. "The list of factors is not exclusive and the court is free to engage in a balancing and weighing of the factors depending on the circumstances of each case." *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 245. "Due regard should be given to what is otherwise a private consensual agreement between the parties." *Dunk*, *supra*, 48 Cal.App.4th at 1801.

The proponent of the settlement has the burden to show that it is fair and reasonable. *Wershba*, *supra*, 91 Cal.App.4th at 245. At the final approval stage, a

---

[5] The actual average and highest Individual California Settlement Payment will be larger than the amounts stated in the Simpluris Declaration because the Net California Settlement Fund is larger due to Class Counsel's request for reimbursement of litigation costs and expenses in an amount that is less than \$17,000.00 (the difference between the amount sought and the amount authorized under the Settlement, i.e., \$3,989.52, will be part of the Net California Settlement Fund). See n.3, *supra*

presumption of fairness exists where, as here: "(1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small." *Dunk*, *supra*, 48 Cal.App.4th at 1802. In reviewing a class settlement, the court need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute. *7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135, 1146. The inquiry is not whether the settlement agreement is the best one that class members could have possibly obtained, but whether the settlement, taken as a whole, is "fair, adequate, and reasonable." *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 55. A settlement need not obtain 100 percent of the damages sought in order to be fair, reasonable, and ultimately, meaningful. *Wershba*, *supra*, 91 Cal.App.4th at 251. Even if the proposed settlement affords relief that is substantially narrower than it would be if the cases were to be successfully litigated, that is no bar to a class settlement because the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding prolonged litigation. *Id.*

A. **The Settlement Resulted from Arm's-Length Negotiations Based Upon Extensive Investigation and Discovery.**

The Parties actively litigated the cases since the Class Action was commenced on March 3, 2021. Class Counsel conducted significant investigation and formal and informal discovery into the facts of the cases to assess the veracity, strength, and scope of the claims, and was preparing the matter for class certification and trial prior to reaching the Settlement. Matavosian Decl., ¶ 7.

The Parties conducted significant formal and informal discovery and investigation into the facts of the cases, and reviewed and analyzed a large volume of information, data, and documents obtained from Plaintiff, Defendant, and other sources in the course of the litigation and in connection with the mediation and

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

settlement negotiations. Matavosian Decl., ¶ 7. Class Counsel served multiple sets of formal written discovery requests onto Defendant (specifically, Form Interrogatories – General (Set One), Special Interrogatories (Sets One and Two), and Request for Production of Documents (Set One)), and noticed the depositions of Defendant's person most knowledgeable designee(s), along with accompanying requests for production of documents. Ibid. The volume of data and documents that Class Counsel reviewed and analyzed included and was not limited to: employment records of Plaintiff, a detailed sampling of Class Members' time and pay data, job description, earning statements, Defendant's Employee Handbook, company policy acknowledgments and forms (including, but not limited to, Defendant's Employee Handbook Acknowledgment Form, California Meal Period Policy Acknowledgement, New Hire Acknowledgement of the Compliance Program and Code of Ethical Conduct, Receipt and Acknowledgement of Acceptable Use Policy, Workers' Comp – Notice to New Employees), employment policies, practices, and procedures (including, but not limited to, Defendant's California Meal Period Policy, Employee Handbook Addendum/Paid Sick Leave Policy, Voluntary Self-Identification), among other information and documents. Ibid. Class Counsel had the opportunity to interview and obtain information from Plaintiff and percipient witnesses, and reviewed and analyzed a volume of information, data, and documents obtained from Plaintiff, Defendant, and other sources. Ibid. Class Counsel developed liability, damages, violation, and penalties valuation models in the course of litigation and in connection with the mediation and settlement negotiations, and met and conferred with Defendant's counsel on numerous occasions, e.g., to discuss issues relating to the pleadings, case management, motion practice, formal and informal discovery, jurisdiction, and the production of information, documents, and data in the course of litigation and in connection with mediation and settlement negotiations, and settlement. Ibid. Other work performed by Class Counsel included, and was not limited to, case strategy and analysis; researching, drafting, reviewing,

and/or revising the pleadings, motion-related papers, the mediation briefing and supporting materials, and settlement documents; and preparing for and attending court proceedings, mediation, and settlement negotiations, among other tasks. Ibid.

After conducting formal and informal discovery and investigation into the facts of the cases, the Parties participated in a formal, full-day mediation conducted on August 24, 2022 by Jeffrey Krivis, Esq., a well-regarded mediator experienced in handling complex labor and employment matters. Matavosian Decl., ¶ 9. In the course of the mediation and settlement negotiations, the Parties exchanged information, documents, and data, and discussed various aspects of the cases, including and not limited to, the risks and delays of further litigation, the risks and expenses to the Parties of proceeding with class certification, representative adjudication, and trial; the law relating to class certification, manageability, off-the-clock theory, rounding, regular rates of pay, reporting time pay, providing a day of rest, meal and rest periods, expense reimbursements, recordkeeping and wage statement requirements, representative PAGA claims and penalties, FCRA claims and penalties, and wage-and-hour law and enforcement; Plaintiff's claims and allegations, and Defendant's defenses thereto, as well as the evidence produced and analyzed; and the possibility of appeals, among other things. Ibid. During all settlement discussions, the Parties conducted their negotiations at arm's length in an adversarial position. Ibid. Arriving at a settlement that was acceptable to the Parties was not easy. Ibid. Defendant contended that individualized questions of fact predominate over any common issues, and these issues would pose challenges to class certification and representative adjudication. Ibid. Defendant and its counsel felt strongly about Defendant's ability to avoid class certification prevail on the merits and, while Plaintiff and Class Counsel believed that they would be able to obtain class certification and prevail at trial. Ibid. With the aid of the mediator's evaluation, the Parties ultimately agreed that this matter was well-suited for

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

settlement given the legal issues relating to Plaintiff's principal claims, as well as the costs and risks to the Parties that would attend further litigation. Ibid.

The Settlement takes into account the strengths and weaknesses of each side's position and the uncertainty of how the cases might have concluded at certification, trial, and/or appeals. Class Counsel analyzed a large amount of information, data, and documents obtained from Plaintiff, Defendant, and other sources that provided a critical understanding of the nature of the work performed by Class Members and PAGA Group Members, as well as Defendant's operations and employment policies, practices, and procedures. Matavosian Decl., ¶ 8. Class Counsel also performed significant research regarding applicable law, which is evolving as it relates to class certification, manageability, off-the-clock theory, meal and rest periods, representative PAGA claims and penalties, FCRA claims and penalties, rounding, regular rates of pay, reporting time pay, providing a day of rest, wage-and-hour law and enforcement, Plaintiff's claims and allegations, and Defendant's defenses thereto, as well as facts discovered. Ibid. The Settlement Agreement reached was based on this large volume of facts, evidence, and investigation. *Id*., ¶¶ 6-9. Additionally, Class Counsel has extensive experience in handling complex wage-and-hour matters, including significant experience in employment class action litigation. *Id*., ¶¶ 16-21.

**B.  The Risks Inherent in Continued Litigation Favor Final Approval of the Settlement.**

The Settlement, which provides for a Gross Settlement Fund of $2,500,000.00, represents a fair, adequate, and reasonable resolution of the cases, given the risks inherent in litigating class and representative claims through certification proceedings, trial, and/or appeals. Matavosian Decl., ¶¶ 9 & 24. The Settlement was calculated using information and data uncovered through extensive case investigation, formal and informal discovery, and the exchange of information in the context of preparing for mediation and ongoing settlement negotiations. *Id*., ¶¶ 6-9.

1   Had the action not settled, Defendant would have vigorously challenged class

2   certification, manageability, and liability. Defendant contended that individualized

3   questions of fact predominated over any common issues, and these issues would pose

4   challenges to certification and representative adjudication. Defendant would have

5   likely argued again at trial, if any, that Plaintiff's claims were not appropriate for

6   class-wide and/or representative adjudication. On the other hand, Defendant also

7   faced the risk of the Court certifying a class and allowing a jury to decide Plaintiff's

8   claims on a class-wide or representative basis. Also, preparation for trial would have

9   been expensive for all Parties.

10      It is preferable to reach an early resolution of a dispute because such

11  resolutions save time and money that would otherwise go to litigation. If this matter

12  had settled after further litigation, the settlement amount would have taken into

13  account the additional costs incurred, and there might have been less money

14  available for Class Members, PAGA Group Members, and the State of California

15  after all was said and done. This is not just an abstract contention. The risks and

16  expenses of further litigation outweighed any benefit that might have been gained

17  otherwise. These risks of further litigation include a determination that the claims

18  were unsuitable for class treatment and/or representative adjudication, failure to

19  obtain certification, class de-certification after certification of a class, allowing a jury

20  to decide the claims asserted in this matter, and the real possibility of no recovery

21  after years of litigation. Additionally, the Parties were moving into the phase of the

22  litigation where they would have to conduct a significant amount of additional

23  discovery, including and not limited to, depositions of Defendant's Person(s) Most

24  Knowledgeable designees, expert witnesses, and percipient witnesses, such as

25  managers, supervisors, and other current and former employees throughout the State

26  of California. Additional discovery would have certainly arisen, which would have

27  cost the Parties additional time and money. In contrast, the Settlement provides real

28  and significant benefits for the Class, PAGA Group Members, and the State of

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

California here and now, while avoiding the further expenses, risks, and delay of prolonged litigation with only the possibility of recovery.

It would be grossly inefficient for such a large class of current and former employees to bring individual actions to recover from Defendant for the alleged violations of wage-and-hour laws. Moreover, the potential individual recovery that could be obtained by a Class Member would not be significant enough to provide him or her with the incentive to sue. By granting final approval of the Settlement, the Court can approve a resolution that provides a certain and substantial recovery for Class Members, PAGA Group Members, and the State of California.

### C.    <u>The Settlement Is Fair, Reasonable, and Adequate.</u>

The Settlement, which provides for a Gross Settlement Fund of $2,500,000.00, represents a fair, reasonable, and adequate resolution of this matter. The Settlement was calculated using information and data uncovered through extensive case investigation, formal and informal discovery, and the exchange of information in the context of litigation, mediation, and extensive settlement negotiations. The Settlement takes into account the potential risks and rewards inherent in any case and, in particular, in this matter. Moreover, considering the facts in this matter, the Gross Settlement Fund represents a considerable recovery.

The Gross Settlement Fund will be fully paid out, in accordance with the terms of the Settlement. As discussed in Section IV, *supra*, each Settlement California Class Member will be paid a *pro rata* share of the Net California Settlement Fund (which is currently estimated to be $1,173,257.02), based on the number of Compensable Work Weeks credited to them, each FCRA Settlement Class Member will be paid from the FCRA Settlement Amount on an equal *pro rata* basis, and each PAGA Group Member will be paid a *pro rata* share of the PAGA Group Member Amount, based on the number of Compensable Pay Periods credited to them. Settlement Agreement., ¶¶ III.19, III.21 & III.22. The highest Individual California Settlement Payment is currently estimated to be approximately $1,053.88 and the

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

average Individual California Settlement Payment is currently estimated to be approximately $559.99.[6] Simpluris Decl., ¶ 20. The estimated Individual FCRA Settlement Payment is approximately $37.28. *Id*., ¶ 22. The highest Individual PAGA Settlement Payment is currently estimated to be approximately $58.02 and the average Individual PAGA Settlement Payment is currently estimated to be approximately $34.53. *Id*., ¶ 24. These are significant individual recoveries, particularly in light of the risks of litigation.

At the final approval stage, "[a]n allocation formula need only have a reasonable, rational basis [to warrant approval], particularly if recommended by experienced and competent class counsel." *In re American Bank Note Holographics, Inc., Securities Litigation* (S.D.N.Y. 2001) 127 F.Supp.2d 418, 429-30. The *pro rata* allocation here is a fair and reasonable way to distribute the Net California Settlement Fund. In light of the above considerations, Class Counsel believes that the Settlement as a whole is fair, reasonable, and adequate, and in the best interest of the Class Members, the State of California, and PAGA Group Members. Matavosian Decl., ¶ 24. Although the recommendations of Class Counsel are not conclusive, the Court can properly take the recommendations into account, particularly if Class Counsel appears to be competent, has experience with this type of litigation, and significant discovery and investigation have been completed, as is the case here. Conte & Newberg, *Newberg on Class Actions* (4th Ed., 2002) § 11.47. Accordingly, the Court should grant final approval of the Settlement.

**D.    <u>The Class Was Represented by Competent Counsel.</u>**

Class Counsel has extensive experience in employment class action law and complex wage-and-hour litigation. Matavosian Decl., ¶¶ 16-21. Lawyers *for* Justice, PC has been appointed class counsel in numerous complex wage-and-hour cases, and has recovered millions of dollars for individuals in California. Ibid. Both Parties' counsel were capable of assessing the strengths and weaknesses of the claims against

---

[6] See n.5, *supra*.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

Defendant and the benefits of the Settlement under the circumstances of the lawsuits and in the context of a private, consensual settlement agreement.

**E.    There Are No Notices of Objection to the California Class Settlement and/or FCRA Class Settlement.**

The Settlement has been well received by the Class – ***not a single Class Member objected to the California Class Settlement and/or FCRA Class Settlement.*** Simpluris Decl., ¶ 16. Specifically, no objections have been made as to the Gross Settlement Fund or the requested Class Counsel Award, Class Representative Service Award, Settlement Administrator Costs, the allocation for the FCRA Settlement Amount, or the allocation for the PAGA Settlement Amount. California courts have consistently found that a small number of objectors indicates the class' support for a settlement and strongly favors final approval. *Wershba*, *supra*, 91 Cal.App.4th at 250-51 (final approval granted despite 20 objectors); *7-Eleven Owners*, *supra*, 85 Cal.App.4th at 1152-53 (final approval granted despite 9 objectors).

Here, the lack of any objections speaks volumes about the fairness, reasonableness, and adequacy of this Settlement. Accordingly, the Settlement as a whole is presumed to be fair, reasonable, and adequate, and the Court should grant final approval of the Settlement in its entirety. *Dunk*, *supra*, 48 Cal.App.4th at 1802.

**VII.  THE SETTLEMENT ADMINISTRATOR COSTS ARE FAIR AND REASONABLE AND SHOULD BE APPROVED.**

As set forth in the accompanying Simpluris Declaration, the total costs incurred and to be incurred by Simpluris for the notice and settlement administration process are $45,000.00. Simpluris Decl., ¶ 25. The costs incurred and to be incurred include, but are not limited to, establishing and maintaining a settlement fund account; establishing and maintaining a calendar of administrative deadlines and responsibilities; processing, issuing, and transmitting settlement payments; distributing notice of the Settlement to the Class; receiving and validating Request

for Exclusions, Notices of Objection, and/or Compensable Work Weeks Disputes; calculating employer payroll taxes owed on the wage portion of Individual California Settlement Payments and providing appropriate forms and calculations to Defendant; providing counsel with weekly reports; and other tasks as the Parties mutually agree or the Court orders Simpluris to perform. Simpluris Decl., ¶ 3.

Accordingly, the Court should grant final approval of payment to Simpluris, a necessary third-party for its handling of the notice and settlement process, in the amount of $45,000.00.

**VIII.** **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the Settlement, and all payments allocated and provided for by the Settlement Agreement, including and not limited to the Individual California Settlement Payment to Settlement California Class Members, Settlement Administrator Costs, the FCRA Settlement Amount, and the PAGA Settlement Amount, in their entirety, as sought herein.

Dated: November 7, 2025

**LAWYERS** *for* **JUSTICE, PC**

By: _____
Selena Matavosian
*Attorney for* Plaintiff and the Class

**LAWYERS** *for* **JUSTICE, PC**
450 North Brand Boulevard, Suite 900
Glendale, California 91203