UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL BRUNO,<br><br>    Plaintiff,<br><br>  v.<br><br>U.S. RENAL CARE, INC., *et al.*,<br><br>    Defendants. | Case No. 2:21-cv-04617-FLA (MRWx)<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT [DKT. 87]** |

## RULING

On November 7, 2025, Named Plaintiff Manuel Bruno ("Plaintiff" or "Bruno") filed the subject Motion for Final Approval of Class Action Settlement ("Motion for Final Approval," Dkt. 87) and Motion for Class Counsel Award and Class Representative Service Award ("Motion for Awards," Dkt. 88).[1] Defendant U.S. Renal Care, Inc. ("Defendant") does not oppose the Motions.[2] The court held a final

---

[1] The court cites documents by the page numbers added by the court's CM/ECF System, rather than any page numbers included natively.

[2] The relevant factual and procedural background is set forth in the court's August 30, 2024 Order granting in part and denying in part Plaintiff's Motion for Preliminary

approval hearing on December 5, 2025.

Having considered the Motions, supporting papers, and the arguments made at the hearing, the court GRANTS the Motion for Final Approval of Class Action and PAGA Settlement (Dkt. 87), CONFIRMS Plaintiff Manuel Bruno as a Class Representative and Lawyers for Justice, PC as Class Counsel, and APPROVES the Settlement.  The court additionally GRANTS in part the Motion for Class Counsel Award and Class Representative Service Award (Dkt. 88), AWARDS Class Counsel $375,000.00 in attorney's fees and $13,010.48 in costs and expenses, and APPROVES Plaintiff's request for a $7,500 service award.

## SETTLEMENT TERMS

**I.  Class and California Private Attorneys General Act of 2004 ("PAGA," Cal. Labor Code § 2698, *et seq.*) Group Definitions**

On November 26, 2024, the court certified provisionally the following classes for purposes of settlement proceedings:

> 1. California Class: All current and former non-exempt employees of Defendant in California during the California Class Period (or if any such person is incompetent, deceased, or unavailable due to military service, the person's legal representative or successor in interest evidenced by reasonable verification).
>
> 2. Fair Credit Reporting Act ("FCRA") Class: All of Defendant's current and former employees and applicants for employment in the United States who applied for a job with Defendant for whom a background check was performed during the FCRA Class Period (or if any such person is incompetent, deceased, or unavailable due to military service, the person's legal representative or successor in interest evidenced by reasonable verification).

Dkt. 65 at 4–5; Dkt. 69 at 1–2.

---

Approval of Class Action and PAGA Settlement ("August 30, 2024 Order," Dkt. 65 at 2–3) and Corrected Order Granting the Amended Motion for Preliminary Approval of Class Action and PAGA Settlement ("March 11, 2025 Order," Dkt. 77 at 2), which are incorporated into this Order by reference.

The Second Amended Joint Stipulation of Class Action and PAGA Settlement and Release of Claims ("Settlement Agreement," Dkt. 80 at 9–53) defines the California and FCRA Class Periods as "the period from March 3, 2019 through February 28, 2023," *id.* at 11 § I ¶ 7, 13–14 § I ¶ 21. The California Class comprises 2,089 individuals who are credited with 231,912 Compensable Work Weeks. Dkt. 87 at 14. The FCRA Class comprises 10,141 individuals. *Id.* As of November 5, 2025, Simpluris, Inc. ("Settlement Administrator") received one (1) request for exclusion from a California Class member and four (4) requests for exclusion from FCRA Class Members. Dkt. 87-3 (Pavlik Decl.) at 6 ¶ 15.

The Settlement Agreement also identifies the following PAGA Group:

> [A]ll current and former non-exempt employees of Defendant in California during the PAGA Period (or if any such person is incompetent, deceased, or unavailable due to military service, the person's legal representative or successor in interest evidenced by reasonable verification).

Dkt. 65 at 5; Dkt. 80 (Settlement Agreement) at 17 § I ¶ 38. The PAGA Period is defined as "the period from February 19, 2020 through February 28, 2023." Dkt. 80 (Settlement Agreement) at 17 § I ¶ 41. The PAGA Group comprises 1,870 individuals who are credited with 87,929 Compensable Pay Periods. Dkt. 87 at 14.

## II. Payment Terms

In full settlement of the claims asserted in this action, Defendant agrees to pay a "Gross Settlement Fund" of $2.5 million on a non-reversionary basis. Dkt. 80 (Settlement Agreement) at 14 § I ¶ 27, 39 § III ¶ 18. The Gross Fund covers: (1) a payment of $1,173,257.02 to the California Class; (2) a payment of $377,932.50 to the FCRA Class; (3) PAGA penalties of $258,300.00, 75% of which shall be allocated to the California Labor and Workforce Development Agency and 25% of which shall be allocated to the PAGA Group; (4) a service award of $7,500.00 to Plaintiff; (5) an attorney's fee award of up to $625,000.00 (25% of the Gross Fund) and litigation costs of $13,010.48 to Class Counsel; and (6) settlement administration costs of

$45,000.00 to the Settlement Administrator. Dkt. 87 at 8, 10–11.

Individual California Class Members are estimated to receive between $5.04 and $1,053.88, with an estimated average payment of $559.99. Dkt. 87-3 (Pavlik Decl.) at 7 ¶ 20. Individual FCRA Class Members are estimated to receive $37.28. *Id.* ¶ 21. Individual PAGA Group Members are estimated to receive between $0.73 and $58.02, with an estimated average payment of $34.53. *Id.* ¶ 24.

### III.   Releases

In compromise of disputed claims, the California Class, FCRA Class, and PAGA Group Members agree to release Defendant from any and all causes of action and factual or legal theories alleged in the operative Second Amended Complaint ("SAC"), or that could reasonably have been alleged based on the facts and legal theories contained in the SAC, arising during the relevant class and group periods. Dkt. 80 (Settlement Agreement) at 18–20 § I ¶¶ 46–48, 28–30 § III ¶¶ 1–3. Plaintiff, in his individual capacity, additionally agrees to release Defendant from any and all claims, actions, charges, complaints, grievances, and causes of action, whether known or unknown, which exist or may exist on Plaintiff's behalf, as of the date of the Settlement Agreement. *Id.* at 30–31 § III ¶ 4. Plaintiff's releases include a waiver of all rights under California Civil Code § 1542.

## MOTION FOR AWARDS

Plaintiff requests the court approve: (1) attorney's fees of $625,000.00 (25% of the Gross Settlement Fund) to Class Counsel; (2) litigation costs and expenses of $13,010.48; and (3) a Class Representative Service Award of $7,500.00 to Plaintiff. Dkt. 88 at 3. Defendant did not file an opposition, and no objectors appeared at the hearing on the Motions.

### I.   Attorneys' Fees

District courts have broad discretion to determine attorney's fees and may choose between the lodestar and percentage methods in calculating fees. *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 992–93 (9th Cir. 2010). The

4

1 | Ninth Circuit has "established 25% of the fund as the 'benchmark' award that should
2 | be given in common fund cases." *Six Mexican Workers v. Ariz. Citrus Growers*, 904
3 | F.2d 1301, 1311 (9th Cir. 1990).
4 |     "The benchmark percentage should be adjusted, or replaced by a lodestar
5 | calculation, when special circumstances indicate that the percentage recovery would
6 | be either too small or too large in light of the hours devoted to the case or other
7 | relevant factors." *Id.*; *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th
8 | Cir. 2002) ("Calculation of the lodestar, which measures the lawyers' investment of
9 | time in the litigation, provides a check on the reasonableness of the percentage award.
10 | Where such investment is minimal, as in the case of an early settlement, the lodestar
11 | calculation may convince a court that a lower percentage is reasonable. Similarly, the
12 | lodestar calculation can be helpful in suggesting a higher percentage when litigation
13 | has been protracted."). The court may also consider factors including: (1) the results
14 | achieved; (2) the complexity of the issues and risks involved in the litigation; (3) the
15 | skill required and quality of work performed; (4) whether counsel's performance
16 | generated benefits beyond the monetary settlement; and (5) the financial burden
17 | carried by counsel during the representation. *See Vizcaino*, 290 F.3d at 1048–50.
18 |     Class Counsel submits the Declaration of Selena Matavosian (Dkt. 87-1,
19 | "Matavosian Decl.") in support of its attorney's fee request, along with billing records
20 | and summaries of the work performed. After reviewing the Motion for Awards and
21 | all relevant documents, the court finds the 25% benchmark award is not fair or
22 | reasonable.
23 |     Class Counsel presents a lodestar calculation of $440,811.50, and argues the
24 | requested attorney's fees are reasonable after a multiplier of 1.42 is applied to account
25 | for factors including: the time and labor required; the risks involved in this litigation;
26 | the complexity of the matter and skill required to perform the legal services properly;
27 | the preclusion of other employment due to counsel's acceptance of this representation;
28 | the contingent nature of the fee; the amount involved and results obtained; the

experience, reputation, and ability of the attorney; and awards in similar cases. Dkt. 88 at 22–24. The court finds Class Counsel's lodestar calculation and requested multiplier are excessive and unreasonable.

First, Class Counsel has not submitted contemporaneous billing records and appears to have submitted reconstructed block-billed entries organized by task. Matavosian Decl. at 25–52. The amount of time listed in these entries is unreasonable. For example, Class Counsel has identified 37.1 hours of work by 9 separate attorneys for the task "Meet and Communicate with Plaintiff Manuel Bruno … During the Case," without providing any information why the amount of time listed for such meetings was necessary or reasonable. As a second example, Class Counsel has identified multiple time entries related to a separate PAGA action before the Los Angeles County Superior Court, without offering any explanation for why those fees were reasonably incurred and not unnecessarily duplicative. *See id.*[3] As a third example, Edwin Aiwazian, a managing attorney and shareholder of Class Counsel, is identified as having performed tasks, such as drafting the initial and first amended pleadings (18.1 hours), that would ordinarily be assigned to a more junior attorney not billing at an hourly rate of $1,495. *See id.* at 26–27, 29.

Accordingly, the court finds Class Counsel's calculated lodestar is excessive and does not reflect a reasonable estimate of the work reasonably performed—

---

[3] Although the Settlement Agreement was for the claims in both this action and the state court PAGA action, Class Counsel offers no explanation for why it chose to file two separate actions involving related claims—which led to duplicative and unnecessary work for the parties and the courts. For example, Class Counsel's submitted records list 13 entries for 1.1 hours and 1 entry for 0.6 hours, by 6 separate attorneys with identified hourly rates of $575 and $850, in connection with stipulations to continue proceedings in the state court PAGA action pending proceedings in this court. Dkt. 87-1 at 30–41. Even if the court were to assume *arguendo* that some of the work performed in the PAGA action was reasonable, in light of the scope of the Settlement, Class Counsel offers no explanation for why Plaintiff maintained the state court PAGA action even after filing a notice of settlement in this action and adding a PAGA claim to this action through the SAC.

especially given that the action settled early, within three months of the filing of the Answer, and there was little substantive motion practice or discovery (19.6 hours total). *See id.*

Second, the hourly rates and hours identified for the attorneys does not match the quality of the work performed in this action. For example, Plaintiff moved to remand the action on the grounds that Defendant failed to establish the amount in controversy met the $5 million jurisdictional minimum—without addressing that Defendant had removed the action in part based on federal question jurisdiction due to Plaintiff's FCRA claim. Dkt. 13. The court denied the Motion to Remand based on the existence of federal question jurisdiction. Dkt. 27 at 3–5. A competent and reasonable attorney would not have brought a motion on those grounds. As a second example, Plaintiff's initial Motion for Preliminary Approval of Class Action and PAGA Settlement (Dkt. 58) was deficient for the reasons stated in the court's August 30, 2024 Order (Dkt. 65), including for Plaintiffs' failure to offer any explanation for their proposed allocations of the Gross Settlement Fund and why they favored the FCRA Class and PAGA Group over the California Class. The court finds the level of skill demonstrated does not merit the lodestar calculated or enhancement requested.

In sum, after reviewing the Motion for Awards, supporting documents, and the relevant portions of the record, the court finds an attorney's fee award of 15% of the Gross Settlement Fund ($375,000) is fair and reasonable in light of all relevant factors including the risks involved, the results obtained, the contingent nature of the litigation, the early settlement, and the skill level demonstrated by counsel. *See Vizcaino*, 290 F.3d at 1048–50.

**II.     Expenses**

Class Counsel are entitled to reimbursement of reasonable out-of-pocket costs and expenses. Fed. R. Civ. P. 23(h); *see also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters). Reasonable costs include

"nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Settlement Agreement allows for recovery of litigation costs and expenses up to $17,000. Dkt. 80 (Settlement Agreement) at 43 § III ¶ 25. Class Counsel seek reimbursement of $13,010.48 in costs and expenses, and provide records supporting their request. Dkt. 87-1 at 54–55.

Class Counsel's request is reasonable and APPROVED.

### III. Incentive Awards

Incentive awards are common in class action cases, where "such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class." *Rodriguez*, 563 F.3d at 958. Plaintiff seeks $7,500 as a Class Representative Service Award, and submits a declaration attesting to the work he performed in connection with this class action. Dkt. 87-2 (Bruno Decl.).

Plaintiff's requested service award of $7,500 is reasonable considering the time he spent and risks he incurred in bringing and participating in this litigation as a class representative. This award is consistent with reasonable and just service awards in the Ninth Circuit. *See Fulford v. Logitech, Inc.*, 2010 WL 807448, at *3 n. 1 (collecting cases awarding incentive payments ranging from $5,000 to $40,000).

The court, therefore, APPROVES Plaintiff's request for a $7,500 service award.

### IV. Conclusion on Motion for Awards

Accordingly, the court GRANTS in part the Motion for Awards, AWARDS Class Counsel $375,000 in attorney's fees and $13,010.48 in costs and expenses, and APPROVES Plaintiff's request for a $7,500 service award.

## MOTION FOR FINAL APPROVAL

### I. Notice

In the March 11, 2024 Order, the court approved the notice proposed by the parties on the condition that the Settlement Agreement and notices were corrected to identify all claims asserted in the SAC and reflect a maximum 25% attorney's fee award. Dkt. 77 at 4–6. The parties made the requisite corrections in the notices

1  provided to the Class and Group Members.  Dkt. 81 (Order approving revised class
2  notices); Dkt. 87-3 (Pavlik Decl.) at 9–27 (Exs. A–C).
3       On or about August 11, 2025, notice was mailed to the California Class, the
4  FCRA Class, and the PAGA Group by U.S. first class mail, in English.  *Id.* at 4–5
5  ¶¶ 8–12.  For Members whose notices were returned as undeliverable and without a
6  forwarding address, the Settlement Administrator performed advanced address
7  searches using Accurint, a reputable research tool owned by Lexis-Nexis, and mailed
8  notices to the updated addresses.  *Id.* at 5–6 ¶ 13.  The extended deadline for Members
9  to respond to the notices was October 9, 2025.  *Id.* at 6 ¶ 14.  As of November 5,
10 2025, the Settlement Administrator received one (1) request for exclusion from a
11 California Class member, no Compensable Work Weeks Disputes from California
12 Class Members, four (4) requests for exclusion from FCRA Class Members, and no
13 notices of objection from California or FCRA Class Members.  *Id.* at 6 ¶¶ 15–17.
14       The parties additionally provided notice to the relevant federal and state
15 officials, as required under the Class Action Fairness Act ("CAFA"), 28 U.S.C.
16 § 1715(b), and PAGA, Cal. Labor Code § 2699(s)(2) (former subsection (*l*)(2)).  Dkts.
17 79, 82.  The final approval hearing was held more than 90 days after issuance of
18 CAFA notice, as required under 28 U.S.C. § 1715(d).
19       Accordingly, the court finds the notice provided to be fair and adequate with
20 respect to the Members who received notice.  *See* Fed. R. Civ. P. 23(c)(2), (e)(1).  The
21 Settlement Administrator shall treat all California Class, FCRA Class, and PAGA
22 Group Members for whom notice could not be delivered as if they had opted out of
23 the Settlement.
24 **II.   Fairness of Settlement Terms**
25       The court may approve a proposed class action settlement only after a hearing
26 and finding that it is fair, reasonable, and adequate after considering whether:
27       (A) the class representatives and class counsel have adequately
           represented the class;
28

   (B) the proposal was negotiated at arm's length;

   (C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

   (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

  Additional factors the court may consider in assessing whether a class action settlement meets this standard include:

> [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) (brackets in original, citations omitted).

  The court found the Settlement Agreement to be fair, adequate, and reasonable previously. Dkt. 77 at 4–6. After considering the Motion for Final Approval, supporting documents, and the parties' arguments at the hearing, the court finds Plaintiff and Class Counsel have represented the class adequately, the Settlement Agreement was negotiated at arm's length, the relief obtained for the class is adequate, and the proposal treats class members equitably relative to each other. *See* Dkt. 87 at 17–25. This finding is further supported by the fact that the Settlement Administrator received no objections to the Settlement Agreement and no objectors appeared at the hearing. *See Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221

F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed settlement are favorable to the class members."); *Rodriguez*, 563 F.3d at 967 (approving settlement where 52,000 putative class members submitted claim forms and only 54 submitted objections.).

Accordingly, the court finds the Settlement Agreement is fair, reasonable, and adequate as to the individuals who received notice. The individuals who did not receive notice, Dkt. 87-3 (Pavlik Decl.) ¶ 13, shall be treated as if they had opted out of the Settlements.

### III. Conclusion as to Motion for Final Approval

For the reasons stated, the court GRANTS the Motion for Final Approval and CONFIRMS Plaintiff Manuel Bruno as Class Representative and Lawyers for Justice, PC as Class Counsel.

### **CONCLUSION**

For the foregoing reasons, the court GRANTS the Motion for Final Approval of Class Action and PAGA Settlement (Dkt. 87), CONFIRMS Plaintiff Manuel Bruno as a Class Representative and Lawyers for Justice, PC as Class Counsel, and APPROVES the Settlement. The court additionally GRANTS in part the Motion for Class Counsel Award and Class Representative Service Award (Dkt. 88), AWARDS Class Counsel $375,000.00 in attorney's fees and $13,010.48 in costs and expenses, and APPROVES Plaintiff's request for a $7,500 service award. The Settlement Administrator shall adjust the payments to the California Class Members, the FCRA Class Members, and the PAGA Group to conform to this Order, and post a copy of this Order on its website, www.simpluris.com/case-search, for at least one (1) year from the date of this Order.

The parties are additionally ORDERED to meet and confer and file a joint statement, within one (1) year of the date this Order is posted on the court's docket, identifying: (1) the number of settlement checks that remain uncashed; and (2) the

total amount of funds transmitted to the State of California Office of the Controller, Unclaimed Property Division.

IT IS SO ORDERED.

Dated: January 5, 2026

                                    FERNANDO L. AENLLE-ROCHA
                                    United States District Judge